NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.R. and J.R.

No. 1 CA-JV 23-0107

FILED 03-04-2025

Appeal from the Superior Court in Mohave County
No. S8015JD202200045
The Honorable Aaron Michael Demke, Commissioner

**AFFIRMED**

COUNSEL

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Vice Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge Jennifer M. Perkins joined.

_____

**H O W E**, Judge:

¶1        Alexis R. ("Father") appeals from the juvenile court's order terminating his parental rights to his biological children under A.R.S. § 8-533(B)(2), the neglect or wilful abuse of a child. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        We view the facts in the light most favorable to upholding the juvenile court's findings. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 479 ¶ 32 (2023). Father is the biological parent of twins, E.R. and J.R., born in August 2021. Shortly before the twins were born, their mother and her two children from other relationships, C.C. (born in February 2008) and M.F. (born in November 2013), moved in with Father.

¶3        Later that year, DCS received a report of abuse in the home. After receiving another report in March 2022, DCS employees went to the family's home to investigate the abuse allegations. When they met with M.F., they observed multiple bruises on his body, including his face and arms, which were in various stages of healing. DCS investigators also spoke to his mother, who admitted that she would have M.F. and C.C. kneel on rice as a form of punishment.

¶4        Given the severity of M.F.'s injuries and mother's admission, DCS took temporary custody of all four children and placed them with their maternal grandmother. DCS then filed a dependency petition.

¶5        By June 2022, the juvenile court had adjudicated all four children dependent. For Father's children E.R. and J.R., the juvenile court affirmed a family-reunification case plan and DCS agreed to provide reunification services.

¶6          Father engaged in DCS services, which included referrals to the Nurturing Parenting Program, anger-management counseling, Love and Logic parenting classes, co-parenting classes, a psychological evaluation, and supervised visitation with his children. But despite his participation in services, DCS reported that he was "checking boxes" and not making real behavioral changes because he continued to minimize his abuse of M.F. and C.C.

¶7          In July 2022, DCS petitioned to terminate Father's and mother's parental rights under A.R.S. § 8-533(B)(2). In December 2022, mother was convicted on child-abuse charges and sentenced to ten years' imprisonment, and DCS amended its petition to include new allegations against her.

¶8          The juvenile court held a termination trial in February and March 2023. DCS presented evidence that Father abused mother's children and was particularly cruel towards M.F.—the younger, more vulnerable child. The DCS investigator testified that C.C. told her that Father forced him to smack M.F., and that if M.F. "didn't react to a smacking it would have to be harder smacking." The DCS supervisor then testified that when she interviewed C.C., he reported that Father would force him and M.F. to kneel on rice as a punishment. She also testified M.F. reported to her that Father would punish him by holding his head under water. The DCS case manager testified that C.C. disclosed that he had to hit M.F. with a bat and force him to remain kneeling on rice if he stopped, and that Father would force M.F. to sleep in the bathtub or outside. A Kingman City police officer later testified that when he interviewed M.F., the child reported that Father would (1) force him to stay outside in the cold, (2) douse him with water and put him in the garage, (3) slap, kick, and throw him, and (4) force him to kneel on uncooked rice.

¶9          Father testified on his own behalf, denying the allegations that he abused mother's children. He also testified that M.F.'s injuries were the result of bullying and mother's abuse. He testified to having a loving relationship with his children and having benefited from reunification services. Although he acknowledged pending criminal charges against him, he asserted that if he were convicted and sentenced to prison, his family could act as the children's placement until his release.

¶10         At the end of the trial, the juvenile court ruled from the bench that DCS proved statutory grounds to terminate Father's parental rights by clear and convincing evidence. A.R.S. § 8-533(B)(2). The court also ruled that the termination was in the children's best interests by a preponderance

of the evidence. In support of these conclusions, the court found clear and convincing evidence that Father physically abused M.F. and emotionally abused C.C. by compelling him to hurt M.F. The court further found that Father's abuse included dunking M.F.'s head in water, compelling him to kneel on rice, forcing him to sleep in a bathtub, making him do jumping jacks, tripping him, and throwing him. The court found that the wounds M.F. suffered were not the result of inappropriate discipline but "a sign of ongoing and consistent and chronic child abuse." Finally, the court found that termination was in the children's best interests because "it is not safe for the twins to be in the care of someone who is engaged in this behavior, this type of abuse, for a prolonged period with half-siblings."

**¶11** In April 2023, the juvenile court entered a written order terminating Father's parental rights. In the order, the court further explained that termination was in the children's best interests because the children would benefit from termination because severance "would further the plan of adoption" and the children "are residing in an adoptive placement which is meeting all of their needs." Father timely appealed and we have jurisdiction. A.R.S. §§ 8-235(A), 12-120.21(A), 12-2101(A); Ariz. R.P. Juv. Ct. 601(a). This decision, however, was delayed because of disclosure issues in the juvenile court. On January 29, 2025, the juvenile court resolved those issues, and we subsequently lifted the stay.

## DISCUSSION

**¶12** Father argues the juvenile court erred by terminating his parental rights because it did not make specific factual findings to demonstrate that his abuse of M.F. and C.C. presented a risk of future harm to his non-abused biological children. DCS responds that he waived this claim by raising it for the first time on appeal.

**¶13** In general, the failure to raise an argument in the juvenile court waives the issue on appeal. *Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 56 ¶ 13 (2017). But we may exercise our discretion to consider the merits of a waived argument when a "good reason exists." *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552 ¶ 33 n.9 (2005) (citation omitted). Here, good cause exists to reach the merits because this case involves termination of Father's parental rights and affects his fundamental liberty interest in the care, custody, and management of his children. *See Logan B. v. Dep't of Child Safety*, 244 Ariz. 532, 538 ¶ 16 (App. 2018). We therefore exercise our discretion to address the merits of Father's claim.

I.     **The Juvenile Court's Written Findings Are Sufficient to Support Its Termination Order.**

¶14     To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8-533, and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8-533(B); *Brionna J.*, 255 Ariz. at 474 ¶ 1; A.R.S. § 8-537(B). We accept the court's factual findings so long as they are supported by reasonable evidence and inferences, and we affirm the court's legal conclusions about the statutory grounds for the termination unless they are clearly erroneous. *Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31. "We review the sufficiency of findings of fact *de novo* as a mixed question of fact and law." *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 296 ¶ 14 (2020).

¶15     One such statutory ground is wilful abuse, which includes "serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S. § 8-533(B)(2). If a parent neglects or abuses a child, "the court may terminate that parent's rights to their other children on this basis, even if there is no evidence that the other children were harmed." *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 227 ¶ 13 (2020) (citations omitted). But to protect the parent's fundamental rights, the juvenile court must find "a demonstrable connection between the ground for termination and the harm or risk of harm to a child." *Id.* at 229 ¶ 24.

¶16     Relying on *Sandra R.*, Father argues that the juvenile court's written findings do not show how his abuse of M.F. and C.C. demonstrates a future risk of harm to his non-abused biological children. But *Sandra R.* does not require written findings of a risk of harm. *Id.* at 230 ¶ 27. Although it encourages the court to make express findings, it requires only that the record contain clear and convincing evidence of a risk of harm to the non-abused child. *Id.* In some cases, "the record may implicitly support a juvenile court's termination order where a parent's proven neglect or abuse of a young child readily demonstrates a comparable risk to the parent's other vulnerable young non-abused children." *Id.*

¶17     In this case, the termination order contains the following findings and legal conclusions about Father:

> [Father] has willfully abused a child or failed to protect a child from willful abuse. A.R.S.  § 8-201(2), 8-533(8)(2). Father is currently facing criminal charges for Child Abuse

as well as two (2) counts of Aggravated Assault by Domestic Violence, due to injuries sustained to the child, [M.F.]. The child was observed with several bruises in various stages of healing on his body, including his face and arms. That child, reported sleeping in the bathtub due to wetting the bed and given only [a] pillow and a blanket. The children, [C.C.] and [M.F.], were reported to kneel on rice as a form of punishment per the Mother. [Father] denies inflicting any of the injuries on [M.F.] and the mother and [Father] report the child, [C.C.], caused the injuries, which [C.C.] denies. Both [C.C.] and [M.F.] disclosed Mother and Father [] were the perpetrators. It is reported Father will yell at the twins when they cry. The abuse of [M.F.] and [C.C.] causes a substantial risk of harm to the children, [E.R.] and [J.R.].

These findings describe the abuse Father and mother inflicted on her older children and support the court's conclusion that Father wilfully abused or neglected a child. They further support the conclusion that Father's abuse of the older children presented "a substantial risk of harm to" his biological children. These summary findings therefore sufficiently address "the ultimate facts" the court relied on when it granted the petition. *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240–241 ¶¶ 22, 25 (App. 2012) (citations omitted) (requiring "at least one factual finding sufficient to support each of those conclusions of law"); *see* Ariz. R.P. Juv. Ct. 353(h)(2)(A).

¶18　　　Moreover, the juvenile court's written findings are supported by reasonable evidence in the record, including the DCS case manager's testimony that Father's biological children would be placed in a significant risk of harm if they were returned to him because of their vulnerable age and the extensive child abuse M.F. and C.C. suffered while living with him.

¶19　　　Father disputes that this evidence was clear and convincing. But we will not re-weigh the evidence on appeal, *see Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3 ¶ 9 (2016), and the juvenile court's written findings about statutory grounds are legally sufficient and supported by evidence in the record.

**II.  The Juvenile Court Did Not Abuse Its Discretion by Finding the Termination of the Parent-Child Relationship Was in the Children's Best Interests.**

¶20  Father asserts that he is a fit parent to his biological children because he did not abuse them, and the juvenile court erred in concluding that he posed a risk to their safety. Because he is a fit parent, he continues, his children's interests in maintaining a familial relationship did not "diverge" from for his own and "DCS failed to prove [he] could not provide a stable home." He further argues the juvenile court focused on his children's adoptability and adoptive placements but ignored the evidence that he had rehabilitated himself by the time of the trial. He contends that the court failed to weigh the evidence of his rehabilitation, which demonstrated that he did not present a risk of harm to his children.

¶21  "At the best-interests stage of the analysis, 'we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence.'" *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 12 (2018) (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286 ¶ 35 (2005)). In balancing these interests, although the court must consider the totality of the circumstances—"including the parent's interest in maintaining a positive parent-child relationship and the parent's efforts and ability to do so"—the court's primary concern is the "child's interest in stability and security." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 478 ¶ 31 (2022). In other words, courts "should consider a parent's rehabilitation efforts" as part of the best-interests analysis, but "the focus of the best-interests inquiry is on the *child*." *Alma S.*, 245 Ariz. at 151 ¶ 15 (emphasis added). Thus, a parent's efforts at rehabilitation and reunification are relevant to the extent they impact the *child's* best-interests.

¶22  Once the court found the statutory ground of wilful abuse, Father's interests diverged from the children's because, as he acknowledges, most statutory grounds are "proxies for parental unfitness because they demonstrate a parent's inability to properly parent his/her child." *Id.* 150 ¶ 10 (cleaned up). Further, at the best-interests stage, "it is a given that the child's best interests predominate," and not the parent's interests. *Timothy B.*, 252 Ariz. at 478, ¶ 31.

¶23  Here the court found the children would benefit from termination because it would provide them with permanency and stability through adoption by a relative placement who was able to meet their needs. This alone is sufficient to find that termination is in the children's best

interests. *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12 (In state-initiated severance actions, "[t]he best interest requirement may be met if . . . the petitioner proves that a current adoptive plan exists for the child, or even that the child is adoptable." (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19 (App. 2004))). This conclusion is supported by reasonable evidence and was not an abuse of discretion. Thus, even if the court did not credit Father's rehabilitation efforts, the court could still properly terminate his rights.

¶24 However, when the court ruled from the bench, it both recognized that Father's biological children were not "the target children" of his abuse and that Father had completed services and appropriate visitation. But the court concluded that his abuse of M.F. and C.C. was "of such a nature that he is not safe, even with the children who were not the target children." Although the court's oral pronouncements are not a substitute for the written findings it must make under A.R.S. § 8-538(A), the court's statements demonstrate that it weighed evidence of Father's engagement in services. *See Logan B.*, 244 Ariz. at 538–39 ¶ 19.

¶25 The court did not err by terminating Father's rights to E.R. and J.R.

**CONCLUSION**

¶26 For these reasons, we affirm.

